UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE HUNT,<br><br>    Plaintiff,<br><br>  v.<br><br>SGT. MARTINEZ, et al.,<br><br>    Defendants. | No. 2:18-cv-3025 JAM KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, who proceeds without counsel and in forma pauperis, in this civil rights action filed under 42 U.S.C. § 1983. This case proceeds on plaintiff's second amended complaint ("SAC") alleging Eighth and Fourteenth Amendment claims for relief against defendants Kramer and Darley, based on two strip or unclothed body searches. Presently pending is defendants' fully briefed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As set forth below, the undersigned recommends that the motion be granted. In light of such recommendation, plaintiff's recently filed motion to begin discovery is denied.

I. <u>Motion to Dismiss: Legal Standards</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89

1

(2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. V. Behrens, 546 U.S. F.3d 580, 588 (9th Cir. 2006).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

II. Plaintiff's Allegations

Plaintiff alleges the following in his SAC. (ECF No. 15.)

A. April 13, 2018 Search

Plaintiff had an appointment with an outside medical provider on April 13, 2018, and prior to the appointment he was taken to R & R (receiving and release), where he was ordered to

2

strip by defendants Darley and Kramer, who performed an unclothed body search. (ECF No. 15 at ¶¶ 37-38.) Plaintiff was ordered to raise his hands above his head, run his hands behind his ears, open his mouth and stick out his tongue, run his fingers through his mouth, lift up his testicles, turn around, present the bottoms of his feet, bend over, spread his buttocks, squat, and cough; plaintiff did not consent, but did comply with all the orders. (ECF No. 15 at ¶ 39-40.) At the time of the search, there were about six California Department of Corrections and Rehabilitation ("CDCR") employees and five inmates present. (ECF No. 15 at ¶ 41.) This search was unprofessional, was not performed in a medical setting or by a medical doctor, and could have been performed in other rooms which were available and empty. (ECF No. 15 at ¶¶ 42-43, 45.) Following this search, plaintiff was taken through a "body scan machine," and then taken to his medical appointment. (ECF No. 15 at ¶ 49.)

As to the April 13, 2018 search, plaintiff does not allege that he was required to pull back the foreskin of his penis, or that any defendant made sexual or otherwise inappropriate comments during the search, or that the search was witnessed by a member of the opposite sex.

### B. August 20, 2018 Search

On August 20, 2018, plaintiff was again scheduled to attend an outside medical appointment. (ECF No. 15 at ¶¶ 1, 9.) Only this time, plaintiff was strip-searched at his cell door, and then required to walk through a metal detector before leaving his building. (ECF No. 15 at ¶ 8.) When plaintiff arrived at medical, he was informed that he might be going to an outside doctor. A few minutes later transport officers arrived, and defendant Darley told plaintiff to follow Darley in the program office to get searched. (ECF No. 15 at ¶ 10-11.) Plaintiff informed defendant Darley that plaintiff had already been strip-searched, but Darley said plaintiff had to do it again. (ECF No. 15 at ¶ 12.) Defendant Darley took plaintiff to holding cell #2, next to another inmate in holding cell #1, and Darley ordered plaintiff to remove his clothing, despite the other inmate in holding cell #1 watching, and the presence of the captain's female secretary. (ECF No. 15 at ¶¶ 11-14.) Plaintiff did not consent to the search, but complied with defendant Darley's orders to raise plaintiff's hands above his head, run his hands behind his ears, open his mouth and stick out his tongue, run his fingers through his mouth, lift up his testicles, turn

3

around, present the bottoms of his feet, bend over, spread his buttocks so Darley could see inside plaintiff's anus, and then pull back plaintiff's foreskin on his penis so Darley could see inside plaintiff's penis. (ECF No. 15 at ¶¶ 14, 16.) When plaintiff objected to pulling back the foreskin, defendant Darley responded, "I do this to people all the time." (ECF No. 15 at ¶ 20.) Plaintiff next writes that he "is informed and believes, and thereon alleges, that he thinks he heard T.H. Darley making moaning sounds and gestures during the unclothed body search, whereby getting sexually aroused." (ECF No. 15 at ¶ 21.) There was an empty room available where the search could have taken place, and the search was not done in a professional manner. (ECF No. 15 at ¶¶ 25, 26.) Following the search, plaintiff was transported to the medical appointment. (ECF No. 15 at ¶ 30.)

Plaintiff alleges he filed a grievance against defendant Darley, and further alleges that inmates Eddie Lee Hillman and Joseph Townsend also filed grievances "concerning deprivation of privacy and sexual harassment[,] along with countless other inmates." (ECF No. 15 ¶ 31.)

### C. Causes of Action, Damages and Requested Relief

Plaintiff alleges that the above strip or unclothed body searches violated plaintiff's rights under the Eighth and Fourteenth Amendments. Specifically, he contends that the April 13, 2018 body search took his self-respect and dignity, was degrading and humiliating, frightening, deprived him of privacy, and caused plaintiff to suffer depression, sadness, anxiety and lack of self-worth. (ECF No. 15 at 15, 18.) The August 20, 2018 body search was highly embarrassing and degrading, deprived plaintiff of privacy, and caused him to suffer mental, emotional, spiritual, and psychological distress, as well as sleep deprivation and low self-esteem. (ECF No. 15 at 13, 15.) Plaintiff was treated differently from other inmates who were similarly situated without good reason. (ECF No. 15 at ¶ 61.) He seeks injunctive relief, money damages, and attorney's fees and costs.[1]

////

---

[1] Plaintiff sought injunctive relief requiring his transfer from High Desert State Prison ("HDSP"). (ECF No. 15 at 26.) However, plaintiff has since been transferred from HDSP, and is now housed at the California Health Care Facility in Stockton, California. In addition, because plaintiff is proceeding without counsel, he is not entitled to attorney's fees.

4

III. Effect of *Sua Sponte* Screening

Plaintiff argues that defendants' motion is precluded by the court's screening order which found plaintiff stated cognizable claims against defendants. (ECF No. 32 at 11-12.) Defendants argue that plaintiff's position is contrary to case law and fails to take into consideration that defendants also seek qualified immunity, raised for the first time as their affirmative defense.

Despite the similarities in wording between 28 U.S.C. §§ 1915(e)(2), 1915A and Rule 12(b)(6), courts distinguish between the *sua sponte* screening of complaints and the consideration of motions that defendants bring under Rule 12(b)(6). "[A] defendant's right to bring a motion to dismiss is not foreclosed by the issuance of a *sua sponte* screening providing that the prisoner has stated a claim." Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) (collecting cases); see Norsworthy v. Beard, 87 F. Supp. 3d 1104, 1111 n.4 (N.D. Cal. 2015) (issuance of a screening order does not preclude the defendant's right to file a motion to dismiss).

Therefore, because defendants were not precluded by the court's screening order from bringing a motion to dismiss under Rule 12(b)(6), the motion was properly filed.

IV. Request for Judicial Notice

Defendants ask the court to take judicial notice of the 2018 Department Operations Manual for the CDCR, section 52050.16.5, Unclothed Body Search of Inmates, which governs and dictates the procedure for unclothed body searches in custodial settings. (ECF No. 30-2.) Plaintiff did not object.

Courts are permitted to "take judicial notice of a record of a state agency not subject to reasonable dispute." See City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004). In Brown v. Valoff, 422 F.3d 926, 931 (9th Cir. 2005), the Ninth Circuit took judicial notice of portions of the Department Operations Manual of the CDCR. Brown, 422 F.3d at 931 n.7. See also Petillo v. Peterson, 2018 WL 1313422 (E.D. Cal. March 14, 2018) (took judicial notice of "specified portions of the CDCR Department Operations Manual.")

Accordingly, defendants' request to take judicial notice is granted. (ECF No. 30-2.) The court takes judicial notice of section 52050.16.5, Unclothed Body Search of Inmates, which governs and dictates the procedures for unclothed body searches in custodial settings. (ECF No.

30-2 at 4-5.)

V. Unlawful Strip Searches and Harassment

   A. Applicable Authorities

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (citation omitted). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted).

The United States Supreme Court and the Ninth Circuit have held that routine visual strip searches do not unreasonably infringe on prisoners' constitutional rights. Florence v. Board. of Chosen Freeholders, 566 U.S. 318, 328 (2012) (upheld, under the Fourth Amendment, a blanket strip search and visual body cavity search for detainees entering detention facilities to detect and deter contraband); Bell v. Wolfish, 441 U.S. 520, 558-60 (1979) (found visual body cavity searches conducted after contact visits used to prevent prisoners' possession of weapons and contraband, even absent probable cause, reasonable under the Fourth Amendment); Michenfelder v. Sumner, 860 F.2d 328, 333-34 (9th Cir. 1988) (held that routine visual body cavity searches conducted in hallways did not violate the Fourth Amendment after situations where inmates had been presented with the opportunity to obtain contraband or a weapon); Rickman v. Avaniti, 854 F.2d 327 (9th Cir. 1988) (upheld prison policy requiring visual strip and body cavity searches every time administrative segregation prisoners left their cells).

Physical sexual assault violates the Eighth Amendment. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (2000). On the other hand, claims alleging brief inappropriate touching with sexual overtones have been dismissed as non-cognizable under the Eighth Amendment. See Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim where defendant officer allegedly entered prisoner's cell while he was on the

6

toilet, rubbed his thigh against the prisoner's thigh and began smiling in a sexual way, and left prisoner's cell laughing).

Where no inappropriate touching is pled, claims alleging mere verbal sexual harassment or otherwise sexually inappropriate conduct have generally been found to be noncognizable under the Eighth Amendment. See, e.g., Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) ("[T]he Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.");[2] Alverto v. Dep't of Corrs., 2013 WL 1750710, at *11-12 (W.D. Wash. Feb. 15, 2013) (finding search not objectively harmful enough and recommending summary judgment for defendant correctional officer on Eighth Amendment claim where defendant, during a strip search of prisoner, said, "[L]et's see how long your weiner hangs" and "lustfully stare[d] at his body" in a search that lasted approximately two minutes), adopted by 2013 WL 1743878 (W.D. Wash. Apr. 23, 2013); Johnson v. Carroll, 2012 WL 2069561, at *30 (E.D. Cal. June 7, 2012) (recommended summary judgment for defendant correctional officer on Eighth Amendment claim where defendant conducted unclothed body search of plaintiff, where plaintiff had to squat, pull his buttocks apart and cough three times, defendant told plaintiff to show him his "ass," and defendant became sexually aroused), adopted by 2012 WL 3756483 (E.D. Cal. Aug. 28, 2012). See also Grisham v. County of Los Angeles, 2019 WL 2360897, at *11 (C.D. Cal. Apr. 26, 2019) (female prisoner failed to identify "any facts raising a reasonable inference that the deprivation was sufficiently serious to support an Eighth Amendment claim," based on allegations that female guards made vulgar comments, shined flashlight up female prisoner's buttocks and vagina for two to three minutes, while laughing and making lustful comments or sexual innuendo, during visual unclothed body searches), adopted by, 2019 WL 2358914 (C.D. Cal. June 3, 2019).

Cross-gender searches are viewed differently. An Eighth Amendment violation has been found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe

---

[2] In Austin, the Ninth Circuit cited Blueford v. Prunty, 108 F.3d 251, 254-55 (9th Cir. 1997) (prison guard who allegedly engaged in "vulgar same-sex trash talk" with inmates entitled to qualified immunity) and Somers v. Thurman, 109 F.3d 614, 624 (9th Cir. 1997) (female correctional officers who allegedly regularly made improper statements about plaintiff while he showered entitled to qualified immunity. Austin, 367 F.3d at 1172.

psychological injury from the search, are subjected to random cross-gender clothed body searches unrelated to prison security. Jordan v. Gardner, 986 F.2d 1521, 1525-28 (9th Cir. 1993) (finding cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth Amendment where women inmates had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men). In the Fourth Amendment context, the Ninth Circuit concluded that a cross-gender strip search of a pretrial detainee in a non-emergency situation where same-sex guards were available was an unreasonable intrusion on the detainee's Fourth Amendment rights. Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1142 (9th Cir. 2011) (*en banc*); see also Shorter v. Baca, 895 F.3d 1176, 1189 (9th Cir. 2018) (under Fourteenth Amendment challenge, court concluded that county's search practices were not entitled to deference where county did not offer reason for leaving mentally ill female inmates shackled to their cell doors for hours, virtually unclothed, and without access to meals, water or a toilet, visible to both male and female prison guards on patrol).

The mere making of harassing comments to a prisoner does not give rise to a federal civil rights claim. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (verbal harassment is not cognizable as a constitutional deprivation under § 1983); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983), overruled in part on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). This is true even when the verbal harassment has sexual undertones. See Austin, 367 F.3d at 1172 ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment.") (citation omitted).

1. April 13, 2018 Search

The undersigned is persuaded that plaintiff's allegations concerning the April 13, 2018 strip-search are similar to the searches conducted in Florence, 566 U.S. at 322-23. Just as in Florence, the April 13, 2018 visual search involved the removal of clothing, looking over plaintiff's naked body parts and other body openings, but with no physical touching and no sexual comments. The search was visual only, and conducted by officers of the same sex. In Florence,

8

the pretrial detainees were searched in the same manner every time they left a holding cell. Here, a visual unclothed body search was performed on plaintiff when he was scheduled to leave the prison for an outside medical appointment. Similarly, the Ninth Circuit upheld such visual strip-searches performed every time an inmate left or returned to his cell. Michenfelder, 860 F.2d at 333. As noted by defendants, the Ninth Circuit recognized that other circuits, including the Ninth Circuit, have found that such routine visual strip-searches are reasonable, although the Supreme Court had not yet addressed the issue. Id. at 333 (collecting cases). Here, plaintiff was subject to such strip-searches less frequently than the prisoners in Michenfelder. The presence of other male inmates and staff during the visual strip-search does not alter the fact that courts find such visual strip-searches are reasonable and reasonably related to legitimate penological security interests. Michenfelder, 860 F.2d at 333-34. In light of such authorities, plaintiff fails to state a cognizable Eighth Amendment claim in connection with the April 13, 2018 search.

### 2. August 20, 2018 Search

The second unclothed body search was also visual and conducted by an officer of the same sex. This search differs in that plaintiff was required to pull back his penis foreskin, the search was performed in the presence of a female staff person, and plaintiff claims defendant Darley sexually harassed plaintiff during the search.

Defendant Darley's order that plaintiff pull back the foreskin on his penis is not part of the procedure set forth in DOM § 52050.16.5. (ECF No. 30-2 at 5.) However, because courts have found visual cavity searches of prisoners' anuses and female prisoners' vaginas are reasonable security measures, the undersigned cannot find that requiring plaintiff to pull back the foreskin from the head of his penis on one occasion is any more invasive or rises to the level of an Eighth Amendment violation. Even if defendant Darley violated § 52050.16.5, such violation does not rise to the level of a constitutional violation.[3] Moreover, plaintiff's reliance on section 3287 of Title 15 is unavailing because such regulation governs the physical inspection of inmates' body

---

[3] In his opposition, plaintiff argues that defendants violated various sections of Title 15, for example, arguing that "[n]o officer has a right to inspect the inside of an inmate penis." (ECF No. 32 at 12. But there is no independent cause of action for violation of Title 15 regulations. Davis v. Kissinger, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009).

9

cavities, and expressly excludes visual inspections. Cal. Code Regs., tit. 15, § 3287. Only physicians may conduct physical inspections, but are not the only ones allowed to perform visual inspections.

In his opposition, plaintiff claims he did allege that defendant Darley touched plaintiff physically. (ECF No. 32 at 7, citing ECF No. 15 at ¶ 18.) But plaintiff did not. Rather, plaintiff alleged that "Darley's orders forcing plaintiff to pull back his foreskin on his penis, it is equivalent to officer Darley doing it himself." (ECF No. 15 at ¶ 18.) Plaintiff cites no authority for such theory, and courts have distinguished between visual searches and those involving actual physical contact, as set forth above. Nowhere in plaintiff's SAC (or in his prior pleadings, for that matter), does plaintiff allege that defendant Darley touched or inappropriately touched plaintiff during the strip search on August 20, 2018.

Later in his verified opposition, plaintiff states that defendant Darley "also touched plaintiff and made contact with plaintiff." (ECF No. 32 at 11.) But he then goes on to write, "[a]ny time you force a person to open his penis and body cavities to inspect the inside of his or her body, it is the same as you personally touching that person as alleged in the [SAC]." (Id.) Plaintiff's contradiction does not change this court's analysis. Even if defendant Darley touched or "made contact with" plaintiff during the August 20, 2018 search where Darley also "moaned" and made "gestures," such allegations, without more, fail to rise to the level of an Eighth Amendment violation. See Watison, 668 F.3d at 1112-14 (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim where defendant officer allegedly entered prisoner's cell while he was on the toilet, rubbed his thigh against the prisoner's thigh and began smiling in a sexual way, and left prisoner's cell laughing).

In addition, plaintiff's claim that he was required to strip naked while the captain's female secretary was "present" is also insufficient to support an Eighth Amendment claim. (ECF No. 15 at ¶¶ 13-14.) While plaintiff alleges the male inmate in the next holding cell was "watching," plaintiff alleges only that the search was conducted in the female secretary's presence. (Id.) Plaintiff does not allege how close was the secretary, or explain whether she was watching or

busy working during this search. In any event, as the above authorities suggest, a male inmate being required to strip for a search does not automatically result in a constitutional violation if females are present. Michenfelder, 860 F.2d at 332 (holding that visual body cavity searches "involving no touching" are reasonable); Grummett v. Rushen, 779 F.2d 491, 493 n.1 (9th Cir. 1985) (declined to reach prisoner's Eighth Amendment challenge to strip search observed by female prison guards because it did not involve "the type of shocking and barbarous treatment protected against by the [E]ighth [A]mendment.").[4] The females' proximity and involvement in the search can make a difference; as noted above, cross-gender searches are viewed differently. But here, plaintiff does not allege that the secretary participated in the search. Plaintiff provided no other information about the secretary's presence. But even if the female secretary witnessed the search, such allegation does not rise to the level of an Eighth Amendment violation. Somers v. Thurman, 109 F.3d 614 (9th Cir. 1997) (held strip searches conducted within view of female staff are generally permissible); Dawson v. Beard, 2016 WL 1137029, *5 (E.D. Cal. March 23, 2016) (recommending dismissal of prisoner's Eighth Amendment claim that two unclothed body searches, one of which was in front of inmates and female officers, for failure to state a claim).

Finally, plaintiff's allegations concerning the sexual harassment by defendant Darley do not rise to the level of the egregious, pervasive, or widespread conduct necessary to establish an Eighth Amendment violation. Taking as true his claim that during the strip-search, plaintiff heard defendant Darley make moaning sounds and gestures, and was sexually aroused, such allegations do not rise to the level of pain sufficient to violate the objective component of the Eighth Amendment. See, e.g., Watison, 668 F.3d at 1112-13 (affirming dismissal of Eighth Amendment claim alleging that guard humiliated inmate when the guard approached the inmate while the inmate was on the toilet, rubbed the inmate's thigh, "began smiling in a sexual [way], and left the cell laughing"); Austin, 367 F.3d at 1171-72 (concluding that claim that a guard exposed himself to inmate while making crude comments was not sufficiently serious to satisfy an Eighth

---

[4] In Michenfelder, the Ninth Circuit pointed out that in Grummett, the court "used a least intrusive means test that has since been rejected in Turner v. Safley[, 482 U.S. 78 (1987)]. Michenfelder, 860 F.2d at 334 n. 3.

11

Amendment violation because it was an isolated incident that was short in duration and there was no allegation of physical contact between the guard and the inmate); Somers, 109 F.3d at 622-23 (holding that female officials' observation of unclothed male inmate, accompanied by "gawking, pointing, and joking" but without physical contact, was not sufficient to meet "objectively harmful" prong of Eighth Amendment test stating, "[t]o hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd").

Further, plaintiff does not allege that he is a particularly vulnerable victim, as in Jordan, 986 F.2d at 1525, such that plaintiff's allegations of harm rise to the level of an Eighth Amendment violation. See Watison, 668 F.3d at 1113-14 (finding plaintiff's "humiliation" not enough to constitute an objectively serious injury and dismissing Eighth Amendment claim on objective prong); Johnson, 2012 WL 2069561, at *30 ("Feeling 'demeaned,' 'degraded,' 'annoyed' and 'offended' " is not enough to state an Eighth Amendment claim) (citing Watison, 668 F.3d at 1113). The alleged "moaning" or "gestures" cannot be described as "unusually gross" to the point of causing psychological damage. Keenan, 83 F.3d at 1092 (implying that harassing comments that were "unusually gross even for a prison setting and were calculated to and did cause [ ] psychological damage" might state an Eighth Amendment claim) (citation omitted).

For all of the above reasons, defendants' motion to dismiss should b granted.

B. Fourteenth Amendment Claim

Plaintiff alleges that he was treated differently from other inmates who were similarly situated without good reason. (ECF No. 15 at ¶ 61.)

The Equal Protection Clause provides "that no State shall deny to any person within its jurisdiction the equal protection of the laws[.]" U.S. const. amend. XIV. The Equal Protection Clause requires that persons similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439; Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth

Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"). However, in order to state an equal protection claim under this "class of one" theory, plaintiff must allege facts to plausibly show that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Nurre v. Whitehead, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing Village of Willowbrook, 528 U.S. at 564). Further, plaintiff must allege discriminatory intent. See Washington v. Davis, 426 U.S. 229, 239-240 (1976); Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003).

"The first step in determining whether [defendants] violated [plaintiff's] right to equal protection is to identify the relevant class to which he belonged." Furnace, 705 F.3d at 1030, citing Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. . . . An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff.'" Thornton, 425 F.3d at 1167, quoting Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986).

Here, plaintiff does not allege he is a member of any suspect or protected class, and he fails to allege that any defendant denied plaintiff any rights based on membership in any suspect or protected class. Plaintiff also alleges no discriminatory intent by any named defendant, for example, that any defendant intended to discriminate against plaintiff by performing such unclothed body searches. The court may not supply essential elements of a claim that plaintiff failed to plead. Ivey, 673 F.2d at 268. The undersigned agrees that plaintiff's SAC fails to provide sufficient facts to state a cognizable equal protection claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In his opposition, plaintiff objects that while some inmates experienced a strip-search

similar to plaintiff's, plaintiff is the only inmate subjected to having his penis inspected while defendant Darley made sexual comments and gestures. (ECF No. 32 at 4.) However, as argued by defendants, in the SAC, plaintiff claimed two other inmates filed grievances "concerning deprivation of privacy and sexual harassment along with countless other inmates." (ECF No. 15 at ¶ 15.) Despite such contradiction, even if plaintiff was treated differently on August 20, 2018, plaintiff fails to allege facts suggesting such treatment was performed with discriminatory intent.

Defendants' motion to dismiss plaintiff's equal protection claim should be granted.

## VI. Qualified Immunity

In the alternative, defendants argue they are entitled to qualified immunity.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The issue of qualified immunity generally entails a two-step process, which requires the court to determine first whether the defendant violated a constitutional right, and then to determine whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court modified the Saucier test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." James v. Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing Saucier standard after Pearson). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202; see, e.g., Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (court may grant qualified immunity by viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law).

Here, the undersigned concludes that plaintiff fails to state a claim that his constitutional rights were violated. Thus, taking plaintiff's allegations as true, defendants prevail on their qualified immunity defense because the record establishes no Eighth or Fourteenth Amendment

14

violations.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (defendants cannot be sued when "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.").

However, even if a constitutional violation occurred with respect to plaintiff's unclothed body searches, defendants argue that they remain entitled to qualified immunity as to the Eighth and Fourteenth Amendment claims.  (ECF No. 30-1 at 14-15.)  Defendants argue that visual body cavity searches comport with governing regulations and have been consistently upheld by the Supreme Court, the Ninth Circuit, and courts in other circuits.  (ECF No. 30-1 at 15.)  Therefore, "a reasonable officer could have reasonably believed that the searches were constitutionally sound."  (ECF No. 30-1 at 16.)

The Court agrees with defendants.  In light of clearly established principles at the time of the incident, defendants could have reasonably believed that their conduct in subjecting plaintiff to a visual unclothed body search was lawful.  Bell, 441 U.S. at 561 (prisoners may be subjected to strip searches and body cavity searches); Grummett, 779 F.2d at 495 (routine pat-down searches which include the groin area, even when performed by guards of the opposite sex, do not violate a prisoner's constitutional rights).  In addition, district courts within the Ninth Circuit have generally found no Eighth Amendment violation from a prisoner's claim that officials conducted an unclothed body search without physical contact.  See, e.g., Dawson v. Beard, 2016 WL 1137029 at *5 (recommending dismissal of prisoner's Eighth Amendment claim that two unclothed body searches, one of which was in front of inmates and female officers, for failure to state a claim); Wilson v. Soto, 2016 WL 825194, *4-*5 (C.D. Cal. Jan. 21, 2016) (recommending dismissal with leave to amend prisoner's claim that prison officials violated Eighth Amendment when prisoner was forced to strip naked and submit to a cavity search in the prison yard in front of inmates, female and male guards, and some guards pointed and laughed); Goodrick v. Sandy, 2013 WL 5409653, *10 (D. Idaho Sept. 25, 2013) (granting defendants' motion for summary judgment on prisoner's claim that he was subjected to strip search because claim did not satisfy objective or subjective components of Eighth Amendment); Carroll v. Read, 2013 WL 1858866, * (C.D. Cal. Jan. 31, 2013) (recommended dismissal for failure to state an Eighth Amendment

claim prisoner's allegation that prison official conducted an unclothed body search on plaintiff, and ordered plaintiff to expose his buttocks to them two separate times because prisoner's claim showed nothing more than a minimal or momentary discomfort); Blacher v. Johnson, 2012 WL 12906134, *2 (E.D. Cal. Sept. 7, 2012) (report and recommendation dismissing prisoner's Eighth Amendment claim that female correctional officers smirked or were condescending when prisoner was subjected to unclothed body search). Accordingly, defendants are also entitled to qualified immunity.

VII. Leave to Amend

The undersigned has considered whether to recommend granting plaintiff leave to amend. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir.1991). However, plaintiff has amended his pleading twice, yet fails to allege facts that would support Eighth or Fourteenth Amendment claims under the legal authorities discussed above. Therefore, the undersigned recommends that the SAC be dismissed without leave to amend. See Schmier v. U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend); Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (leave to amend need not be granted where amendment would be futile).

VIII. Motion re Discovery

On January 16, 2020, plaintiff filed a motion to begin discovery. In light of the instant findings and recommendations, plaintiff's motion is denied without prejudice.

VI. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' request to take judicial notice is granted. (ECF No. 30-2.)

2. Plaintiff's motion (ECF No. 47) is denied without prejudice.

Further, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 30) be granted; and

2. This action be dismissed with prejudice.

| | |
|---|---|
| 1 | These findings and recommendations are submitted to the United States District Judge |
| 2 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days |
| 3 | after being served with these findings and recommendations, any party may file written |
| 4 | objections with the court and serve a copy on all parties. Such a document should be captioned |
| 5 | "Objections to Magistrate Judge's Findings and Recommendations." Any response to the |
| 6 | objections shall be filed and served within fourteen days after service of the objections. The |
| 7 | parties are advised that failure to file objections within the specified time may waive the right to |
| 8 | appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991). |

Dated: February 5, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hunt3025.mtd.12b6